**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

MARY JANE SHAW,              )
                                           )
           Plaintiff,          )
                                           )
        v.                    )       Case No. 1:21-CV-86-SNLJ
                                           )
KILOLO KIJAKAZI, [1]       )
Commissioner of the Social     )
Security Administration,      )
                                         )
          Defendant.      )

## MEMORANDUM AND ORDER

The Commissioner of the Social Security Administration denied plaintiff Mary Jane Shaw's application for Disability Insurance Benefits under Title II of the Social Security Act. Plaintiff now seeks judicial review, alleging that the Administrative Law Judge ("ALJ") erred by concluding that plaintiff's irritable bowel syndrome ("IBS") was not a severe impairment. The Commissioner filed a response memorandum, but the plaintiff did not file a reply, and the time for doing so has now passed. As explained below, the ALJ's decision is supported by substantial evidence on the record as a whole and is affirmed.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Under Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

## I.      Procedural History

Plaintiff was born in 1965.  Plaintiff filed an application for Disability Insurance Benefits on February 10, 2020, alleging an onset of disability of January 2, 2020. She also indicated she stopped working because she was terminated from her job due to workforce reduction.  [Tr. 175].  Her claim was disapproved, and plaintiff requested a hearing by an ALJ.  After a hearing, the ALJ issued an unfavorable decision.  Plaintiff filed for review by the Appeals Council, and the Appeals Council denied plaintiff's request for review. Thus, the ALJ's decision is the final decision of the Commissioner. Plaintiff seeks judicial review.

## II.     Disability Determination—Five Steps

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A), *id.* § 1382c(a)(3)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A), *id.* § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability.   20 C.F.R.  §§ 404.1520(a), 416.920(a).   First, the Commissioner considers the claimant's work activity.   If the claimant is engaged in

substantial gainful activity, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).  "The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs."  Soc. Sec. Ruling 85-28 (listing basic work activities).  The claimant carries the burden to show that an impairment is severe.  *Kirby*, 500 F.3d at 707–08.

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled—regardless of age, education, and work experience—and this ends the analysis.  20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's severe impairment does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform any past relevant work.  20

C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i).   An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (cleaned up); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and, therefore, "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).   Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion."  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).   Ultimately, the claimant is responsible for providing evidence relating to the RFC and the Commissioner is responsible for developing the claimant's "complete medical history. . . ." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The claimant is not disabled if the ALJ determines that the claimant retains the RFC to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, then burden of production shifts to the Commissioner to show that the claimant maintains the RFC to perform other work that exists in significant numbers in the national economy.  *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   Though the burden of production shifts to the commissioner, the claimant keeps the burden of persuasion to prove disability. *Stormo v.*

*Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v).  If the claimant cannot make an adjustment to other work, then the claimant is disabled.  *Id.*

### III.    The ALJ's Decision

At Step One, the ALJ found that plaintiff met the insured status requirements through September 30, 2025 and that she had not engaged in substantial gainful activity since the alleged onset date of January 2, 2020.  At Step Two, the ALJ found that plaintiff suffers from three severe impairments: (1) status post remote thoracic outlet syndrome surgery and revision; (2) stage 0/grade 1 intraductal carcinoma in situ, left breast; and (3) degenerative disc disease of the cervical spine, status post anterior cervical disectomy and fusion at C5-6.  [Tr. 19].  The ALJ found that plaintiff's impairments of migraines and IBS were non-severe because they did not significantly limit plaintiff's ability to perform basic work or because they were responsive to treatment.  *Id.* at 19–20.  The ALJ recognized that non-severe impairments can affect functional capacity "when considered in combination with one another and the claimant's severe impairments."  *Id.* at 20.  The ALJ considered the total effect that these non-severe impairments would have on her RFC.  *Id.* at 20, 22 ("I considered all of the documentary and testimonial evidence, even if not specifically referenced in this decision.").

At Step 3, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  At Step 4, the ALJ found that plaintiff had the RFC to:

> Perform light work as defined in 20 CFR 404.1567(b) except she cannot climb ladders, ropes, or scaffolds and is limited to no more than occasional overhead reaching, pushing, or pulling bilaterally.  The claimant can have no concentrated exposure to extreme cold and must work in an environment with a noise level of no more than 3-moderate.

[Tr. 21] (emphasis added).

After a "thorough review of the entire evidence of record," [Tr. 24], the ALJ found that plaintiff's testimony on the intensity, persistence, and limiting effects of her symptoms was "not entirely consistent with the objective evidence contained in the medical evidence and other evidence of the record." *Id.*  She also noted a "context of unremarkable physical examinations throughout the period at issue. . . ." *Id.*  The ALJ considered plaintiff's symptoms, testimony, and record evidence, such as plaintiff's 100-percent disability rating from the Department of Veterans Affairs, the medical consulting examinations, and other medical records. *Id.* at 22–24.

With this RFC, the ALJ found plaintiff was able to perform her past relevant work of human resources advisor or personnel clerk.  [Tr. 24–26].  The ALJ also proceeded to Step 5, finding that plaintiff could perform the alternative work of cleaner or hand packer. [Tr. 26–27].  In making these determinations, the ALJ relied, in part, on vocational expert testimony.  [Tr. 24–26, 56–61].  The vocational expert testified that plaintiff could not perform past work if she were to be "off task 20 percent of the work day" or was "going to be absent two or more days per month."  [Tr. 60] ("In my opinion . . . [i]t would result in termination").

IV.     **Standard of Review**

The Court must affirm the ALJ's decision if it is supported by substantial evidence on the whole record.  42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings."  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)) (alteration in original).  The Court must also consider any evidence that fairly detracts from the ALJ's decision.  *Id.*  The Court must give the record a "searching inquiry" and balance the weight of the evidence in favor of the ALJ's decision against the weight of the evidence that detracts from the ALJ's decision.  *Burress v. Apfel*, 141 F.3d 875, 878 (8th Cir. 1998).  "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision."  *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992); *see also Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (citing cases).

In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ; even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).  "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's

7

decision." *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001)).

## V.    Discussion

Plaintiff's sole argument on appeal is that the ALJ erred when she characterized plaintiff's IBS as non-severe.  Within this argument, plaintiff asserts that the ALJ should have factored accommodations for plaintiff's IBS into the RFC.  [Doc. 26, at 15].  Plaintiff relies on her testimony to justify the severity of her IBS.  Plaintiff testified that one day per week she has to use the restroom "four to six times a day with the laxative," and that once a month she would have a bowel accident at work.  [Tr. 54–56].  She claims that the medical records corroborate her testimony and that the ALJ improperly dismissed her testimony.  [Doc. 26, at 13–15].  Finally, plaintiff claims that any accommodations for IBS in the RFC—time off task and work absences due to bathroom emergencies—would render plaintiff unemployable, and thus, disabled.  [Doc. 26, at 15].

### A.    The ALJ's Classification of Plaintiff's IBS as Non-Severe

The ALJ briefly dispensed with plaintiff's claims of severe IBS, summarizing:

> The claimant has non-severe impairments of migraines and irritable bowel syndrome. . . . She alleged that her irritable bowel syndrome causes her to urgently use the restroom four to six times one day per week. However, the medical evidence of record documenting care within the relevant period rarely addresses these purportedly debilitating conditions.  As such, I find that the record does not support a finding that irritable bowel syndrome or migraines have significantly limited the claimant's ability to perform basic work activities.

[Tr. 19].

Admittedly, this succinct discussion does not fully explain why the ALJ thought that the medical records discredited plaintiff's testimony regarding the severity of her IBS symptoms. Therefore, this Court must carefully scrutinize the whole record and the parties' arguments to determine whether substantial evidence supports the ALJ's classification of plaintiff's IBS as non-severe.

First, plaintiff argues that treatment for plaintiff's IBS is well-documented and cites multiple records to show various diagnoses and alleged treatments for that condition. [Doc. 26, at 13]. Yet, the ALJ acknowledged that plaintiff suffered from IBS and recognized it as a medical impairment. [Tr. 19]. She just did not find plaintiff's IBS to be a severe medical impairment. *Id.* Diagnosis of a medical condition and being prescribed medication does not necessarily establish that a medical condition is severe; rather, the condition must interfere with basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 404.1522. Many of these medical records refer to treatments that occurred *before* the onset date, and some records go back as far as 2010. [Tr. 384, 388, 625]. Other medical records merely list irritable bowel syndrome as one of plaintiff's ongoing conditions, not that she needed treatment for IBS. [Tr. 881].

As the Commissioner points out, the medical records do not state whether plaintiff's constipation during her 2013 hospital stay—for which she was given medication—was caused by IBS or some other condition. [Doc. 27, at 8] (citing [Tr. 1047, 1056, 1061, 1075, 1151–53, 1158]). Additionally, the 2010 and 2013 records significantly pre-date the alleged onset date of January 2, 2020, and the records do not support a finding that her IBS was a severe condition either at the time of treatment or her onset date. More recent

medical records show plaintiff reported no difficulty in controlling her bowels, [Tr. 338–39], and that she was having regular bowel movements daily.  [Tr. 349].  Thus, the medical records fail to establish how plaintiff's IBS interfered with basic work activities such that it was a severe impairment.

Plaintiff then cites her own testimony to support a finding that her IBS was severe. Plaintiff reports that her IBS causes constipation, which requires her to take a laxative. This, in turn, causes emergency runs to the bathroom at least four to six times in a single day, once a week.  [Tr. 54].  Meanwhile, this laxative causes a bathroom emergency and accident at least once per month.  [Tr. 55].  The ALJ may discount plaintiff's subjective complaints if they are inconsistent with the evidence as a whole.  *See Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011).  The ALJ discredited this testimony, finding it unsupported by the medical records, as detailed above.  [Tr. 19, 22].  The records are void of plaintiff mentioning that her IBS was debilitating, or that it was interfering with her work or other basic activities.  Plaintiff was also able to work full time without any restriction due to IBS, indicating that her IBS did not significantly limit her ability to perform basic work activities. *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) ("Working generally demonstrates an ability to perform substantial gainful activity."). Medical records showed that plaintiff worked full time up to one month before her onset date.  [Tr. 19, 22, 280].

Inconsistencies between reported pain levels, personal history, work history, and medical records can support an ALJ's decision to discredit some of a plaintiff's testimony. *Bryant v. Colvin*, 861 F.3d 779, 782–83 (8th Cir. 2017).  Plaintiff worked full time for

years despite her IBS.  The medical records show that plaintiff's IBS was manageable and did not interfere with basic work activities.  There are no records suggesting that plaintiff sought treatment solely for her IBS or that she had problems controlling her bowels.  Therefore, the ALJ's decision to not credit plaintiff's testimony was supported by contradictory evidence.  Thus, the ALJ's finding that plaintiff's IBS is non-severe was supported by substantial evidence throughout the whole record.

In sum, substantial evidence supports the AJL's finding that plaintiff's IBS is not a severe impairment.  But this finding does not end the analysis.  Even though plaintiff's IBS is non-severe, the ALJ is still required to consider plaintiff's IBS in crafting the RFC and to provide any accommodations as needed.  The Court now turns to the issue of whether the ALJ erred in not providing any special accommodations in the RFC for plaintiff's IBS.

**B.      The ALJ's Incorporation of Plaintiff's IBS in Plaintiff's RFC**

Even though substantial evidence supports the ALJ's finding that plaintiff's IBS is not severe, the ALJ is still required to consider all of plaintiff's impairments—both severe and non-severe—when determining the RFC.  *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008).  An ALJ's failure to consider all impairments or to adequately explain why a claimant's testimony should not be believed as to some impairments is reversible error.  *Id.* That being said, plaintiff did not preserve this point.  Nevertheless, in compliance with guidance from the Eighth Circuit, *see id.*, the Court will address whether the ALJ should have accommodated her non-severe impairment in the RFC.

The ALJ found that plaintiff's testimony at the hearing supported additional limitations in the RFC beyond the limitations identified by the state's consultants.  [Tr. 23–

24].  This shows that the ALJ was receptive to some of plaintiff's testimony and found her complaints credible as to some of her own limitations.  Yet the ALJ did not find that all of plaintiff's statements were supported by the evidence in the record, and she chose not to credit some of plaintiff's testimony.  [Tr. 22–24].  The ALJ most thoroughly discussed why the medical records and other evidence did not corroborate plaintiff's self-reported pain levels, [Tr. 22–24], but she also concluded that plaintiff's complaints of IBS were not as severe as plaintiff claimed.  [Tr. 19]; *see also Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) (listing factors an ALJ should in evaluating inconsistencies between a claimant's testimony and medical evidence).

At least one district court has found that an ALJ errs when an RFC makes no accommodation for a non-severe impairment that causes frequent bathroom breaks.  *See Bane v. Berryhill*, No. 5:18-CV-00030-JM-JTK, 2018 WL 4599664 (E.D. Ark. Sept. 25, 2018), *report and recommendation adopted*, No. 5:18-CV-00030-JM-JTK, 2018 WL 4938686 (E.D. Ark. Oct. 11, 2018).  In *Bane*, the ALJ found that the claimant had severe irritable bowel syndrome and non-severe stress incontinence.  *Id.* at *2.  Stress incontinence is a condition that can cause frequent trips to the bathroom.  *Id.*; *see also Stress urinary incontinence* (SUI), Stedmans Medical Dictionary 440840 (updated Nov. 2014) (defining SUI as "leakage of urine as a result of coughing, straining, or some sudden voluntary movement, due to incompetence of the sphincteric mechanisms.").   The ALJ acknowledged that the plaintiff suffered from stress incontinence but did not factor that condition into the RFC.  *Bane*, 2018 WL 4599664, at *2.  The Commissioner argued that because the plaintiff reported spending a lot of time in a casino then her condition did not

12

prevent her from working.  The court rejected this argument.  "Clearly, there are no consequences for taking frequent bathroom breaks while gambling that are comparable to the difficulties such breaks would present in a working environment. She also testified to keeping an extra set of clothes in her car in case she needed to change due to her incontinence." *Id.*  The court found error when the RFC made no mention of limitations "that would account for Bane's particular difficulties resulting from her incontinence and irritable bowel syndrome." *Id.*

The case of *Kiely v. Astrue* also deserves discussion.  No. 3:10CV1079 MRK WIG, 2011 WL 5078772 (D. Conn. Sept. 2, 2011), *report and recommendation adopted*, No. 3:10CV1079 MRK WIG, 2011 WL 5078620 (D. Conn. Oct. 25, 2011) (discussing RFC assessment and the plaintiff's irritable bowel syndrome).  In that case, the ALJ considered the plaintiff's IBS to be severe, which was supported by the medical evidence. *Id.* at *2–3.  But the ALJ erred when the RFC assessment did not include discussion of the plaintiff's limitations caused by the plaintiff's IBS.  The vocational expert's testimony regarding the IBS limitations was particularly important:

> In response to questions from Plaintiff's counsel, the [vocational expert] testified that, if in addition to the limitations imposed by the ALJ, the hypothetical individual had to miss one day of work per month because of illness, there were no jobs that she could perform.  Additionally, he testified, that if that hypothetical individual had to take five to eight bathroom breaks a day, she would be precluded from performing any employment.  He estimated that an employer's tolerance 'would be no more than two or three unscheduled bathroom breaks' a day.

13

*Id.* at *2.  The court found that the ALJ erred because "the ALJ never included the limiting effects of Plaintiff's need to use the bathroom frequently in her RFC assessment or in her questions to the [vocational expert]."  *Id.* at *6.

This case is distinct from both *Bane* and *Kiely*.  First, substantial evidence supports the ALJ's finding that plaintiff's IBS was not severe.  Unlike in *Kiely*, the medical records do not show that plaintiff's IBS is severe.  As discussed above, the ALJ relied on substantial evidence throughout the whole record to conclude that plaintiff's IBS was not as severe as claimed.  Notably, the most recent medical records indicate plaintiff had no difficulty controlling her bowels and that she had regular bowel movements.  [Tr. 338–89, 349].  Plaintiff's only evidence of the seriousness of her IBS is her own testimony that she would have to use the bathroom four to six times one day a week due to a laxative she was taking, and that she would have approximately one bowel accident a month while at work.  The ALJ found that plaintiff's testimony of the severity of her IBS was not corroborated by the medical records, and so she declined to rule it as a severe impairment.  [Tr. 19].  Given that other medical records show that plaintiff reported having regular bowel movements, [Tr. 349], and that she reported no difficult in controlling bowels [Tr. 338], there was plenty of medical evidence to indicate that plaintiff's testimony was not entirely reliable.  *See Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (discussing *Dozier v. Heckler*, 754 F.2d 274, 275–76 (8th Cir. 1985)) (finding that an ALJ may make an informed decision on the absence of a severe impairment when there is substantial evidence indicating the absence of that severe impairment).

Plaintiff continued to work while enduring her IBS, which indicates that her IBS symptoms were tolerable both to her and to her employers during that period.  [Tr. 20, 175]; *see Naber v. Shalala*, 22 F.3d 186, 189 (citing *Dixon v. Sullivan*, 905 F.3d 237. 238 (8th Cir. 1990)) ("[A] condition that was not disabling during working years and has not worsened cannot be used to prove present disability.").  Indeed, plaintiff reported that her decision to stop seeking work was due in part to an involuntary reduction in the workforce, not necessarily her own symptoms.  [Tr. 175].  Plainly, plaintiff's IBS was not disabling during her working years, and neither the medical records nor plaintiff's testimony indicate the condition worsened.  Therefore, the ALJ had reason to discount plaintiff's testimony as to the frequency and severity of her IBS symptoms, which also factors into the RFC.  Ultimately, the ALJ understood she had to factor plaintiff's IBS into the RFC: she "considered any such effect that [plaintiff's] non-severe impairments would have on her ability to function when formulating the [RFC]."  [Tr. 20].

The ALJ relied on the vocational expert's testimony "related to overhead reaching, *time off-task*, and *absenteeism*," when considering plaintiff's RFC and available work, [Tr. 26, 27, 60–61] (emphasis added), which shows that the ALJ considered the possible limitations arising from plaintiff's IBS and other non-severe impairments.  The vocational expert testified that a hypothetical claimant who would be "off task 20 percent of the work day" or was to be absent "two or more days per month" could not perform plaintiff's past sedentary work.  [Tr. 60–61].  Presumably, such limitations would also preclude a hypothetical claimant from performing the light, unskilled work of a cleaner or hand packer.  *See* [Tr. 26–27, 59–61].  Yet, even if plaintiff's IBS symptoms were consistent

15

with her testimony—and substantial evidence supports the ALJ's finding that they are not—then plaintiff is not precluded from performing her past work under the given hypothetical.  Plaintiff reported that *one day* per week results in four to six visits to the bathroom, but that does not show that she would be "off task" more than two hours per day, nor does it indicate how much time is spent in the bathroom.  Likewise, plaintiff reported that she would have one accident a month, but there is no indication that such accidents would require her to be absent *an entire day* from work.

In any event, one accident per month does not result in two absences per month, as discussed in the vocational expert's hypothetical.  Unlike the plaintiff in *Bane*—who suffered from incontinence frequently, even after surgery to address that issue—plaintiff does not suffer incontinence, but occasional constipation from IBS.  Given the non-severity of plaintiff's IBS, and that plaintiff reported regular bowel movements in 2019, [Tr. 349], no difficulty controlling her bowels or bladder in 2020 [Tr. 338], and that she continued to work full-time up to the onset date, the ALJ had substantial evidence to find that plaintiff's RFC did not need a limitation for plaintiff's IBS.

Finally, though plaintiff argues that her IBS problems as she describes "would drastically affect Plaintiff's [RFC]," [Doc. 26, at 15], plaintiff fails to explain what changes need to be made to the RFC or how those changes would implicate the testimony of the vocational expert.  Instead, plaintiff concludes—without analyzing the RFC or citation to any authority—that plaintiff's self-reported symptoms would "make her unemployable." *Id.*  But plaintiff admits that her self-described symptoms did not render her unemployable from the basic fact that plaintiff was employed while she suffered her self-described

symptoms.  [Tr. 55].  Plaintiff has failed to justify such conclusory statements, to explain how the RFC would be any different, and why that change would render plaintiff unemployable.  Accordingly, substantial evidence supports the ALJ's decision.  Even if the evidence could have supported a conclusion in the other direction, this Court must affirm the ALJ's decision where substantial evidence supports the ALJ's decision.  *Weikert*, 977 F.2d at 1252.

## VI.     Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence.  The ALJ explained why plaintiff's IBS was not severe and she considered the non-severe IBS in crafting the RFC.  Substantial evidence supports a finding that plaintiff's IBS symptoms are not as severe as she claims, and so this Court must affirm the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is AFFIRMED and plaintiff's complaint [Doc. 1] is DISMISSED with prejudice.  A separate judgment will accompany this Order.


Dated this 25th day of August, 2022.


_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE

17